# Shields *v.* Atkinson.

*Trover against Commission Merchants, with Counts for damages for violating instructions in selling cotton.*

1. *Surety on rent note; when has the right to recover value of crop from merchant, appropriating it for advances when delivered to pay rent.*—When a tenant delivers part of his crop to a surety on his note for rent, to be used in paying rent, and the latter forwards it to commission merchants, to be used for that purpose, and they, in violation of instructions, apply it in payment of advances made by them to the tenant, such surety may, after paying the rent, recover the value of the crop so delivered to them.

2. *Same; same.*—In such case, the rent being the paramount charge on the crop, the surety has a property in, and a right to hold it, and apply it to the payment of rent, and may recover its value, although it was delivered to him for the double purpose of paying rent, and advances.

APPEAL from Selma City Court.

Tried before Hon. JOHN HARALSON.

This was an action, brought by R. W. Atkinson, against W. B. Shields, as surviving partner of the firm of Williams & Shields. The material facts of the case are stated in the opinion of the court. There was a judgment for the plaintiff, and its rendition is the error assigned.

JOS. F. JOHNSON, and E. W. PETTUS, for appellant.

W. M. BROOKS, for appellee.

STONE, J.—As we understand the evidence, there is no dispute, or ground for dispute, that for the year 1873, L. B. & O. F. Atkinson leased a plantation of Burge, executor of Hope, at the agreed rent of some four hundred and fifty

dollars, and that R. W. Atkinson became their surety, in a note given to secure the rent; that L. B. & O. F. Atkinson cultivated the plantation during that year, and made thereon a crop of cotton and corn; that at the end of the year 1873, they delivered, or turned over to R. W. Atkinson, three of the bales of cotton grown on the said plantation that year; that in the month of December, R. W. Atkinson shipped the said three bales of cotton to Milhous & Shields, cotton factors of Mobile, marked R. W. A., and accompanied the shipment with a letter to them, in which he said: " I ship you four [three] B. C. * * which is some of L. B. & O. F. Atkinson's cotton, which you will please hold as long as there is any probability of it rising. The proceeds of this lot is to be appropriated to the payment of their rents, for which I am security. * * * * I drew draft on you in favor of H. W. Burge, Ex'ct. Est. Jno. Hope, dec'd, for $200, rents L. B. & O. F. Atkinson, which please accept now, and pay 1st January 1873. (Signed). R. W. Atkinson." That R. W. Atkinson did draw the draft on Milhous & Shields, in favor of Burge for two hundred dollars, which, when presented, Milhous & Shields refused to accept, or pay; that during the year 1873, Milhous & Shields had advanced to L. B. & O. F. Atkinson some four hundred dollars, to enable them to make said crop, and had taken from them a mortgage on said crop to secure its payment, which mortgage was duly recorded; that Milhous & Shields sold the three bales of cotton for $208 net, and applied the proceeds to the credit of L. B. & O. F. Atkinson, and refused to account for such proceeds to R. W. Atkinson; that said R. W. Atkinson has paid Burge his rent claim in full, and now sues to recover the proceeds of said three bales of cotton from Shields, surviving partner of Williams & Shields. There are two discrepancies in the evidence—one material, and the other immaterial. R. W. Atkinson testifies that L. B. & O. F. Atkinson turned over to him the three bales of cotton, to apply the proceeds towards the payment of the rent. L. B. Atkinson testifies that the cotton was turned over to R. W. Atkinson to pay the advances, and the rent. Both concur in saying the cotton was delivered to R. W. Atkinson, and there is no testimony in conflict with this. Now, whether delivered for the single purpose of paying the rent, or for the double purpose of paying the rent and advances, it authorized R. W. Atkinson to apply it towards the rent—that being the primary and paramount charge upon it. Being delivered to him, R. W. Atkinson acquired a property in, and right to possess, and hold the cotton, of which no one could deprive him, without first paying the rent, and relieving him from liability therefor. Shields' mort-

[Tecumseh Iron Co. v. Mangum.]

gage lien was inferior and subordinate to the lien for rent. Code of 1876, § 3467 *et seq.* and § 3286; *Stern v. Simpson*, 62 Ala. 194; *Abraham v. Carter*, 53 Ala. 8; *Ellis v. Martin*, 60 Ala. 394; *Smith v. Bryan*, *Id.* 235; *Westmoreland v. Foster*, 60 Ala. 448.

The testimony is also in conflict, on the question whether L. B. and O. F. Atkinson re-paid to R. W. Atkinson the rent which he had paid to Burge, the landlord. R. W. testifies positively that they had not re-paid him, while the testimony of L. B. tends to show, that he and his brother, O. F., had turned over to their brother sufficient property to discharge both the lien for rent, and the liability for advances. L. B. testifies at a distance from the scene of the transaction, with no mention of documents or memoranda, to aid his recollection, and with a very general and indefinite statement of recollected premises from which he draws his conclusions. We think the testimony of R. W. Atkinson is entitled to more consideration and weight, than that of L. B. Atkinson, and we concur in the judgment rendered by the Selma City Court in this cause.

Affirmed.